UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  8:20-cv-00116-JLS-KES                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:
Not Present                                                    Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER (1) GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION (Doc. 3) AND (2) DISMISSING PLAINTIFFS' COMPLAINT**

Before the Court is a Motion to Compel Arbitration filed by Defendants Diamond Resorts Corporation, Diamond Resorts Hawaii Collection Development, LLC, and Diamond Resorts Financial Services, Inc.  (Mot., Doc. 3.)  Plaintiffs Minoru Imai and Mari Imai opposed, and Defendants replied.  (Opp., Doc. 5; Reply, Doc. 6.)  Having taken the matter under submission and considered the parties' briefs and other papers on file in this action, for the following reasons, the Court GRANTS Defendants' Motion to Compel Arbitration and DISMISSES each of Plaintiffs' claims.

## I. BACKGROUND

### A. Factual Background and Initiation of Suit

Defendants are corporate entities associated with Diamond Resorts International, Inc., a corporation engaged in the "hospitality and vacation ownership industry [which operates] a network" of hotels, resorts properties, and other vacation-related assets.  (Mot. at 1.)  Plaintiffs are California residents, each over the age of 65, who traveled to Hawaii

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES         Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

and on April 5, 2019, at the Modern Honolulu Hotel, located in Honolulu, "purchased from defendants[,] 115,000 points in a multi-state time-share project." (Compl. ¶¶ 1, 11, 48, Notice of Removal Ex. A, Doc. 1-2; Opp. at 2.)  In their Complaint, Plaintiffs acknowledge that prior to the purchase giving rise to this dispute, they already "owned a time-share interest with defendants in Las Vegas which [Plaintiffs] had previously purchased [] as part of the 'US Collection' of time-shares operated by defendants." (Compl. ¶ 16.)  Plaintiffs allege that at the Modern Honolulu Hotel they entered into two agreements: (1) a "Credit Sale Contract: Diamond Resorts Hawaii Collection Purchase and Security Agreement (Hawaii)," ("Credit Sale Contract," Mot. Ex. 1, Doc. 3-2) and (2) a "Club Assignment Agreement," whereby Plaintiffs assigned their right to use, occupy, and possess the time-share to "Club Diamond" in exchange for "points," which were redeemable for use at other locations.  (*Id*. ¶¶ 8-12.)

On the day of the purchase, Plaintiffs attended a six or seven hour-long sales seminar conducted by Ryan Gonsalves at the Modern Honolulu Hotel.[1]  (*Id*. ¶ 15.) According to the Complaint, "[a]t all relevant times Ryan Gonsalves [held himself out as and] was acting as a dual agent with a fiduciary duty to explain to the plaintiffs the terms and meaning of the time-share contracts." (*Id*. ¶ 22, 26, 32.)  During the presentation, Plaintiffs aver the that Defendants, through Gonsalves, made the following untrue representations:

> a) That the time-share interest purchased by the plaintiffs would appreciate. and increase resale price and value over time.
> b) That the time-share interest purchased by the plaintiffs could be freely exchanged, transferred and sold.
> c) That the time-share interest purchased by the plaintiffs was a financial investment.

---

[1] Defendants state that, including the purchase at issue here, Plaintiffs have purchased four timeshares from Defendants over approximately the past decade. (Mot. at 2, Reply at 2; Imai Timeshare Purchase Agreements, Reply Ex. 2, Doc. 6 at 12-62.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00116-JLS-KES                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

> d) That the time-share interest purchased by the plaintiffs would receive booking priority over non-purchasing vacationers wishing to stay at one or more of the properties owned and/or maintained by the defendant.
> e) That the time-share interest could be rented out and defendants would assist plaintiffs in renting out their interest.
> f) That the maintenance fees more or less remain the same and do not increase substantially over time.
> g) That defendants would assist plaintiffs in getting their money back which they had lost based on a bad experience with their Nevada time-share.
> h) That defendants were entitled to recover approximately $100,000.00 from owners in the US Collection, including plaintiffs, based on hurricane damage to defendants' properties in the Caribbean.
> i) That the government would come after plaintiffs' family if they could not pay the $100,000.00 sum being demanded by defendants.
> j) That by switching to the Hawaiian Collection and purchasing the time-share that is the subject of this action, plaintiffs would not have to pay the $100,000.00 sum being demanded by defendants.

(*Id.* ¶ 18, 25.) In reliance on the above representations, which Plaintiffs did not discover were false until May of 2019, Plaintiffs entered into the time-share agreements, allegedly suffering damages in the amount of $408,203. (*Id.* ¶¶ 30-35.) Additionally, Plaintiffs claim that during Gonsalves' time-share presentation, "defendants opened two credits cards in plaintiffs' name without plaintiffs' knowledge or consent . . . and charged these credit cards a combined amount of $24,000.00." (*Id.* at ¶¶ 28, 53-55.)

     On July 31, 2019, Plaintiffs filed the instant action in Orange County Superior Court, bringing claims for: (1) fraud; (2) intentional concealment; (3) rescission; (4) elder abuse; and (5) declaratory relief. (Compl. ¶¶ 14–69.) Defendants removed the matter to federal court on October 17, 2019. (Notice of Removal, Doc. 1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00116-JLS-KES             Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

### B. The Credit Sale Contract

In connection with their Motion, Defendants have provided a copy of the Credit Sale Contract executed by Plaintiffs at the time of their time-share purchase. The Contract contains a broad arbitration provision, titled "**ARBITRATION PROVISION,**" mandating, at the election of either party, arbitration before JAMS of "any claim [] between [Plaintiffs] and Diamond,[2] whether preexisting, present, of future, arising from or relating to this Agreement." (Credit Sale Contract at 4.) The term "claim" is given a similarly expansive meaning:

> "Claim" shall be broadly construed and includes, without limitation, disputes concerning: purchase, financing, ownership or occupancy; breach, termination, cancellation or default; condition of any Collection Accommodation; THE Club or other exchange programs; reservations, points or rewards programs; applications and personal information; marketing or sales solicitations, representations, advertisements, promotions or disclosures; and collection of delinquent amounts and the manner of collection. "Claim" also includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, Uniform Commercial Code, regulation, ordinance, common law and equity.

(*Id.*) The Arbitration Provision further provides that "[a]ny in-person hearing will be held in the City and County of Honolulu, [Hawaii] unless otherwise agreed." (*Id.*) Similarly, the Credit Sale Contract states that it "is governed by Hawaii law without regard to Hawaii's choice of law rules." (*Id.*) Additionally, in the event of any arbitration initiated by Plaintiffs, Defendants committed to paying "all administrative and arbitrator fees exceeding $250." (*Id.*) Under the heading "<u>Right to Reject Arbitration Provision</u>," the document notes:

> You may reject this Provision by sending Diamond a written notice which gives

---

[2] The Arbitration Provision expressly notes that "'Diamond' also means Diamond's parent companies, subsidiaries, and affiliates." (Credit Sale Contract at 4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                           Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

> your name and Agreement number with a statement that You reject the Arbitration Provision. The rejection notice must be sent by certified mail, return receipt requested, to 10600 West Charleston Blvd., Las Vegas, Nevada 89135, Attn: Arbitration Rejection Notice. A rejection notice must be signed by You and received by Diamond within thirty (30) days after You sign this Agreement. Rejection of arbitration will not affect any other term of this Agreement.

(*Id*. at 5.)

## II.  **LEGAL STANDARD**

Congress enacted the Federal Arbitration Act "in 1925 as a response to judicial hostility to arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012). The FAA provides that an agreement to arbitrate disputes arising from "a contract evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. "The court's role under the Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The "party seeking to compel arbitration has the burden under the FAA to show [these two elements]." *Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), *superseded by statute on other grounds*. However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). Arbitration agreements may also "be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In these analyses, a court may consider evidence outside of the pleadings, such as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00116-JLS-KES            Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

declarations and other documents filed with the court, using "a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure 56]." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004); *see also Hadlock v. Norwegian Cruise Line, Ltd.*, No. 10-0187-AG (ANx), 2010 WL 1641275, at *1 (C.D. Cal. Apr. 19, 2010); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1104 n.1 (9th Cir. 2010) ("We take . . . facts from the First Amended Complaint, on file in the district court, and declarations filed in support of and in opposition to the motion to dismiss. All are part of our record."). Additionally, "a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).

### III. DISCUSSION

#### A. Agreement to Arbitrate

"The threshold issue in deciding a motion to compel arbitration is 'whether the parties agreed to arbitrate.'" *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)); *see also Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 132 (9th Cir. 1988). Here, Defendants provided sufficient evidence of an agreement to arbitrate based on the terms of the Credit Sale Contract. Moreover, Plaintiffs do not dispute the existence of an agreement to arbitrate. Rather, they oppose arbitration on the grounds that the Credit Sale Contract is procedurally and substantively unconscionable. (*See* Opp.) Hence, the Court addresses only those objections to the Arbitration Provision's enforcement.

#### B. Governing Law

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Tri-Union Seafoods, LLC v. Starr Surplus Lines Ins. Co.*, 88

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                                           Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

F. Supp. 3d 1156, 1165 (S.D. Cal. 2015) (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013)).  Therefore, here, the Court applies the applies the choice of law rules of the state of California.  *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  "If the parties state their intention in an express [contractual] choice-of-law clause, California courts ordinarily will enforce the parties' stated intention[.]" *Hatfield*, 564 F.3d at 1182 (9th Cir. 2009) (quoting *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1450 n. 7 (2007)).  Courts deviate from that typical outcome only when "the analytical approach articulated in § 187(2) of the Restatement (Second) of Conflict of Laws ("187(2)"), [and explained in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992)], dictates a different result."  *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012).

"As a threshold matter, a court must determine 'whether the chosen state has a substantial relationship to the parties or their transaction, or ... whether there is any other reasonable basis for the parties' choice of law.'"  *Id*. (quoting *Nedlloyd Lines*, 3 Cal. 4th at 466).  "If … either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California."  *Nedlloyd Lines*, 3 Cal. 4th at 466.  Absent such a conflict the parties' decision governs, but if a fundamental conflict with California law is found, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue[.]'"  *Id*. (citing § 187(2) of the Restatement (Second) of Conflict of Laws).  "If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance [California courts] decline to enforce a law contrary to [the] state's fundamental policy."  *Id*.

As noted above, the Credit Sale Contract executed by the parties expressly provides it is to be governed by Hawaii law.  Here, the parties' choice of law clearly has a substantial relationship to their transaction.  The contract, for the purchase of a timeshare interest in the Diamond Resorts Hawaii Collection, was executed in Honolulu.  Additionally, the Contract's execution was intertwined with Hawaii and Hawaiian third parties in multiple manners.  For example, the Escrow Agreement was placed on file with the Hawaii State Department of Commerce and Consumer Affairs and the broker, West

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

Maui Resort Partners, L.P., has its principal place of business on the Island of Oahu. (Credit Sale Contract at 3, 7.)  Thus, at the very least, there is a reasonable basis for the parties' selection of Hawaii law.  *Keicy Chung v. Vistana Vacation Ownership, Inc.*, No. CV 17-04803-RGK (JCx), 2017 WL 6886721, at *4 (C.D. Cal. Oct. 19, 2017), aff'd sub nom. *Chung v. Vistana Vacation Ownership, Inc.*, 719 F. App'x 698 (9th Cir. 2018) (finding that Hawaii had substantial relationship to purchase agreement executed in Hawaii, for a timeshare in Hawaii property).  The Court next looks to whether Hawaiian law is contrary to any fundamental policy of California.

"There is no bright-line definition of a 'fundamental policy.'  A fundamental policy must be 'substantial,' and 'may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.'"  *In re Zukerkorn*, 484 B.R. 182, 192–93 (B.A.P. 9th Cir. 2012) (citing § 187 comment g of the Restatement (Second) of Conflict of Laws) (internal citation omitted).  "However, the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law."  *Medimatch, Inc. v. Lucent Techs. Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000).  That is because the relevant standard "is not simply [whether the foreign] law is contrary to [California's] public policy, but [whether] it is so offensive to [California] public policy as to be 'prejudicial to recognized standards of morality and to the general interests of the citizens[.]'"  *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 135 (1985).

As the gravamen of the instant Motion is contractual unconscionability, an area of law concerning the propriety of contracts and the potential oppressive exercise of superior bargaining power, conflicts with fundamental policies are possible.  But there is none here.  California and Hawaii law on unconscionability is largely similar and it does not appear that the application of one state's law over the other, in this instance, would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

outcome determinative.[3]  Further, the Court is aware of no aspect of Hawaiian unconscionability law "so offensive to California public policy as to be prejudicial to recognized standards of morality."  Nor have Plaintiffs pointed to any.  In the absence of a conflict between Hawaii law and a fundamental policy of California, the parties' choice of law is operative, and the Court applies Hawaii law to its examination of the Credit Sale Contract and its execution.  *See Keicy Chung*, 2017 WL 6886721, at *4.

### C. Unconscionability

"[A]n arbitration agreement is generally 'valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.'" *Gabriel v. Island Pac. Acad., Inc.*, 140 Haw. 325, 336, 400 P.3d 526, 537 (2017) (quoting HRS § 658A-6(a) (2016)). The party challenging the validity of the arbitration agreement bears the burden of proof.  *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1296 (9th Cir. 2006).

"Under Hawai'i law, unconscionability is recognized as a general contract defense" capable of rendering a contract unenforceable. *Narayan v. The Ritz-Carlton Dev. Co., Inc.*, 140 Haw. 343, 350 (2017).  The doctrine of unconscionably encompasses two aspects: (1) "[p]rocedural unconscionability, or unfair surprise, [which] focuses on the 'process by which the allegedly offensive terms found their way into the agreement[,]'" and (2) "[s]ubstantive unconscionability, [which] focuses on the content of the agreement and whether the terms are one-sided, oppressive, or 'unjustly disproportionate.'"  *Id.*  "Generally, a determination of unconscionability requires a

---

[3] For example, under both California law and Hawaii law a finding of unconscionability typically requires a showing of some degree of both procedural and substantive unconscionability.  *See Kilgore v. KeyBank,* N.A., 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)); *Balogh v. Balogh*, 134 Haw. 29, 41 (2014).  And the focus of those two inquiries is comparable. *Compare Balogh*, 134 Haw. at 41, *with Saravia v. Dynamex, Inc.,* 310 F.R.D. 412, 419-22 (N.D. Cal. 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  8:20-cv-00116-JLS-KES                               Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

showing that the contract was both procedurally and substantively unconscionable when made, but there may be exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Balogh v. Balogh*, 134 Haw. 29, 41, 332 P.3d 631, 643 (2014) (internal quotations and alterations omitted) (collecting cases) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 12 (1988)).

Plaintiffs are unable to show either procedural or substantive unconscionability

#### 1.  The Contract is Not Procedurally Unconscionable

Procedural unconscionability "requires an examination of the contract formation process and the alleged lack of meaningful choice." *Narayan*, 140 Haw. at 351 (2017) (quoting *Gillman*, 73 N.Y.2d at 11).  "Courts consider such factors as 'whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power' between the parties."  *Id*.  "[A]dhesion contracts, where a form contract is created by the stronger of the contracting parties, and the terms "unexpectedly or unconscionably limit the obligations and liability of the weaker party[,]" while not unconscionable *per se*, are often found to "satisfy the procedural element of unconscionability."  *Id*.

Here, Plaintiffs argue that the Contract is procedurally unconscionable for two reasons: (1) it is a contract of adhesion drafted solely by Defendants (Opp. at 6, 9-10), and (2) Plaintiff Minoru Imai attests that he is diabetic and was "dizzy and disoriented" at the time he executed the Credit Sale Contract (Opp. at 7; Minoru Imai Decl., Doc. 5 at 11).

Thus, Plaintiffs' argument relies heavily on the false premise that it was a "take-it-or-leave-it" agreement to arbitrate; it was not.  As noted above, the Contract specifically provides for the unilateral right to reject the arbitration clause, and thereafter clearly explains how to exercise that right.  (Credit Sale Contract at 5.) Additionally, it explicitly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                                Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

stated that, had Plaintiffs chosen to exercise this right of rejection, their other rights under the Contract would not have been affected in any way.  (*Id.*)

In *Circuit City Stores, Inc. v. Ahmed*, the Ninth Circuit held that a meaningful thirty-day opportunity to opt out of an agreement to arbitrate meant that the agreement was not a contract of adhesion, especially where the terms of the agreement were clearly spelled out and there was no other indicia of procedural unconscionability.  283 F.3d 1198 (9th Cir. 2002).  Likewise, in *Echevarria v. Adir Int'l. LLC.*, a "fairly succinct" take-it-or-leave-it contract was presented with a bolded, separately titled arbitration provision that explicitly explained the recipient's option to reject the provision during the first sixty days following signing.  No. 2:15-cv-09172-CAS(KSx), 2016 WL 3397416, at *8 (C.D. Cal. June 13, 2016).  Because Echevarria failed to exercise this option and doing so would not have affected her other rights under the contract, the court found that negotiation of the arbitration provision had no oppressive component.  *Id*.  The Court sees no meaningful distinction between the arbitration opt-out provisions in those cases and the opt-out provision here.  The circumstances surrounding and terms of the Credit Sale Contract plainly do not suggest procedural unconscionability; the terms of the arbitration clause and the unilateral right to reject the clause were clearly set forth, under separately titled sub-headings, within a relatively short seven-page document.  *Cf. Narayan*, 140 Haw. at 351-52 (2017) (finding procedural unconscionability where the arbitration clause was "buried" on page thirty-four of a thirty-six-page document and was "ambiguous when read in conjunction with the other controlling documents").  And that Plaintiffs previously executed a timeshare agreement with Defendants containing a nearly identical arbitration provision further demonstrates the absence of unfair surprise.  (*See* Imai Nevada Timeshare Purchase Contract, Reply Ex. 2, Doc. 6 at 56-62.)

Plaintiffs' argument regarding the mental state of Mr. Imai is similarly unavailing.  Despite the conspicuous absence from the Complaint of any allegation regarding Mr. Imai's capacity to contract, in a declaration submitted with Plaintiffs' Opposition, Mr. Imai now attests that he was "dizzy, lightheaded, confused, and disoriented" and "did not realize what [he] was signing," or understand he was waiving his right to a jury trial and agreeing to be bound by the arbitration clause.  (Minoru Imai Decl.)  That is because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00116-JLS-KES                                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

he became hypoglycemic after being "held in a room for 6 [to] 7 hours with nothing to eat or drink other than a bottle of water." (*Id*.) He does not indicate that anything affected Mrs. Imai's capacity to contract, but instead notes that in Japanese culture, "it is the husband who leads [and] the wife [who] is taught to accommodate." (*Id*.) Mental incapacity is typically not in and of itself a "sufficient basis for the cancellation of a written instrument unless the state of mind complained of is such that it rendered the afflicted person incapable of understanding the nature and effect of the transaction at the time the instrument was executed." *Pontes v. Pontes*, 40 Haw. 620, 623 (1954). Rather, cancellation of contractual obligations are warranted when "mental weakness and incapacity [is] accompanied by fraud, imposition, abuse of confidence or over exercise of authority" within an effort to "tak[e] advantage of such mental weakness." *Id*. Plaintiffs' Opposition contains no legal argument supporting the contention that under the circumstances, Mr. Imai's hypoglycemic state amounts to a sufficient lack of capacity to contract to constitute a defense to the enforcement of the Arbitration Provision. (*See* Opp.) Regardless, it is undisputed that following execution of the Credit Sale Contract, Plaintiffs had thirty days within which to review the plainly worded document with clear heads and exercise their unilateral right to reject the provision. As Mr. Imai does not claim that he remained in a hypoglycemic and weakened mental state during those thirty days, Plaintiffs have failed to show procedural unconscionability as to the Credit Sale Contract and its Arbitration Provision.

### 2. The Contract is not Substantively Unconscionable[4]

Plaintiffs argue that the Contract is substantively unconscionable because it: (1) mandates that the arbitration take place in Hawaii and before JAMS or AAA; and (2)

---

[4] In discussing substantive unconscionability, Plaintiffs' Opposition includes a citation to a document not found in the record of this case as well as an argument that does not reflect the facts of this litigation. At page 6, the Opposition references a "declaration of Julie Kisha" and argues that the place of arbitration should not be fixed in Florida because the transaction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00116-JLS-KES                    Date: April 13, 2020
Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

imposes undue financial burden on the Plaintiffs, should they arbitrate. (Opp. at 6-9.) Plaintiff is plainly wrong on each point.

       First, Plaintiffs confuse the agreement's selection of an arbitration *organization*—here JAMS or, alternatively AAA—with the selection of an arbitrator, hence, the case Plaintiffs cite is inapposite. *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923-26 (9th Cir. 2013) (concluding arbitration agreement was substantively unconscionable in part because the process for selecting an arbitrator inherently favored the defendant and *precluded* the use "of institutional arbitration administrators, namely AAA or JAMS") (emphasis added)). Moreover, Plaintiffs fail to explain why conducting the arbitration in Hawaii, where the Contract was executed and where Plaintiffs have traveled in the past, is unconscionable. *See Picardy v. Sky River Mgmt., LLC,* 129 Haw. 106, 2013 WL 656808, at *2-*3 (2013).

       Second, the Contract expressly states that in any plaintiff-initiated arbitration, Defendants will "pay all administrative and arbitrator fees exceeding $250." (Credit Sale Contract at 4). This term does not support a finding of substantive unconscionability. *See Picardy,* 2013 WL 656808, at *2-*3.

       In sum, Plaintiffs have failed to demonstrate any degree of procedural or substantive unconscionability.

### D.    Request for Dismissal

       Defendants argue that because each of Plaintiffs' claims is subject to arbitration the Court should dismiss rather than stay the proceedings. (Mot. at 8-9.) Plaintiffs do not argue that any particular claims fall outside the scope of the clause or specifically oppose the request for dismissal should the court find their claims subject to arbitration.

       "If a court '... determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration, or to dismiss the case if all of the

---

occurred in Southern California. However: (1) there is no Kisha Declaration before the court; (2) the transaction occurred in Honolulu; and (3) the place of arbitration is fixed in Honolulu.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00116-JLS-KES                                  Date: April 13, 2020

Title: Minoru Imai et al. v. Diamond Resorts Corporation et al.

alleged claims are subject to arbitration.'" *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015); *see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1060 (9th Cir. 2004) (citing *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723–725 (9th Cir.2000)) ("the district court [did not] err in dismissing the plaintiffs' claims that were subject to arbitration pursuant to Fed.R.Civ.P. 12(b)(6)").

Because it appears that all of Plaintiffs' claims fall with the Credit Sale Contracts' broad, enforceable Arbitration Provision, and Plaintiff do not argue for a stay, the Court DISMISSES the action.

### IV.     CONCLUSION

For the reasons stated above, and conditioned upon the Defendants' payment of all administrative and arbitrator fees exceeding $250, the Court GRANTS Defendants' Motion to Compel Arbitration and DISMISSES Plaintiffs' Complaint.

Initials of Preparer: _____